UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ELEANOR LAURIN,

                         Plaintiff,

                - against-                                02 CIV 1938 (WK)

LEE POKOIK, LEE POKOIK REALTY,
and STEINBERG & POKOIK MANAGEMENT
CORP.,
                        Defendants.
------------------------------------------------------------X

**Reply Memorandum of Law in Further Support of Motion for Reargument/Reconsideration Submitted on Behalf of Defendants Lee Pokoik and Lee Pokoik Realty**

## PRELIMINARY STATEMENT

Defendants Lee Pokoik and Lee Pokoik Realty ("LPR") submit this Reply Memorandum in further support of its motion for reconsideration/reargument of the Court's March 15 Memorandum and Order denying their motion for summary judgment on Plaintiff's claims under Title VII and the ADEA.

Unable to rebut the arguments set forth by Defendants in support of the instant motion, Plaintiff incorrectly argues that Defendants' motion disregards the applicable standards for resolving a motion for summary judgment and improperly requires the Court to weigh the evidence in the record.

As shown herein, and in their Memorandum of Law, Defendants' have submitted a valid and well-supported motion for reconsideration/reargument in this matter. A review of the arguments submitted by Defendants' in support of the instant motion yields the inescapable conclusion that their motion for summary judgment should have been granted as to Plaintiff's federal claims.

## ARGUMENT

## I

### THE COURT IMPROPERLY CREDITED PLAINTIFF'S SPECULATION AND CONJECTURE AS EVIDENCE IN CONCLUDING THAT QUESTIONS OF FACT EXIST ON THE INTEGRATED ENTERPRISE ISSUE

As recognized by the Court in its Memorandum and Order, the Second Circuit has held that, in determining whether two companies can be deemed to be part of an integrated enterprise, "the critical question to be answered . . . is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir. 1995). Defendants respectfully contend that the Court improperly credited as evidence Plaintiff's own speculation and conjecture regarding the "critical" issue of what entity made the final decisions regarding employment matters relating to her. Specifically, the Court erroneously relied upon Plaintiff's own testimony regarding her "speculation" that she would have been fired if Arnold Steinberg did not want her working for Mr. Pokoik (Laurin dep. p. 739), and her "belief" that Mr. Pokoik did not have the authority to hire her based upon her post-hiring meeting with the LPR accountants. (Laurin dep. pp. 560, 565-67). Clearly, such speculation and conjecture is insufficient to support the denial of a motion for summary judgment. See Merli v. Bill Communications, Inc., 2002 WL 424649, *2 (S.D.N.Y. 2002) (McKenna, J.). Plaintiff has produced nothing to warrant the Court reaching a different conclusion on this issue.

In an effort to justify the Court's acceptance of her clearly inadmissible testimony, Plaintiff puts forth several arguments. First, she argues that the "extensive evidence" of the interrelationship between Lee Pokoik, LPR and Steinberg & Pokoik Management Corp. ("SPMC") warranted the denial of the instant motion. (Pl. Memo p. 5). In support of that

2

argument, Plaintiff refers to, *inter alia*, the Court's "comment[] on the history between the Pokoik and Steinberg families," Mr. Pokoik's status as an employee of SPMC, and her claim that she performed services for both LPR and SPMC. (Id.) Conspicuously absent from the examples of the alleged "extensive evidence" offered by Plaintiff, however, is *any* evidence relevant to the Second Circuit's "critical question." In fact, *none* of the evidence relied upon by Plaintiff has any relevance to the issue of which entity made the final decisions concerning employment matters relating to Plaintiff.

Plaintiff next argues that Defendants' motion is without merit because it only focuses on her "limited testimony" regarding issues such as her hiring, firing, and whether she could be disciplined by anyone other than Lee Pokoik. (Pl. Memo. p. 5). Rather than rendering Defendants' motion meritless, however, it is clear under the law that the content of Plaintiff's "limited testimony" on those crucial issues is what warrants the granting of summary judgment in favor of Defendants. As the Court recognized in its decision, in answering the Second Circuit's "critical question," it must consider which entity made the decisions relating to the "hiring, discipline, and termination" of the employee. See Duffy v. Drake Beam Morin, Harcourt General Inc., 1998 WL 252063 at *4 (S.D.N.Y. 1998). Thus, Defendants' reliance upon Plaintiff's "limited testimony" on those topics is not only proper, but is essential in order to determine whether Plaintiff has produced sufficient evidence to create a question of fact as to whether an integrated enterprise existed.

After criticizing Defendants for only focusing on the "limited" topics of hiring, firing, and discipline, Plaintiff then attempts to justify the Court's reliance upon her testimony regarding her post-hiring meeting with the accountants from the firm of Eisner & Lubin. A review of Plaintiff's testimony regarding her meeting with the accountants from Eisner & Lubin reveals

that no "reasonable inference" can be drawn between that meeting and SPMC being involved in the decision to hire her to work at LPR. First, despite Plaintiff's characterization of the meeting as an "interview," it is undisputed that she was never told by anyone - not the accountants, not Mr. Pokoik, nor anyone at SPMC - that the meeting was an "interview." (Laurin dep. pp. 559-70). Second, the meeting took place two weeks *after* she had already been hired by, and working for, LPR. (Id. pp. 562-63). Further, other than the accountants identifying SPMC as one of their firms' clients, no further mention was made of SPMC during their meeting with Plaintiff. (Id. pp. 559-70). And finally, no one ever advised Plaintiff that she could or would be fired if she was somehow found to be unqualified by the accountants. (Id.) These facts and conclusions are undisputed and drawn directly from Plaintiff's own testimony.

    Based upon the above, it is clear that no reasonable factfinder could infer from Plaintiff's testimony that SPMC had any involvement in the decision to hire Plaintiff to work for LPR in 1994. Plaintiff's argument that Defendants' position is somehow without merit on this point because "the record is devoid of any evidence from LPR or SPMC explaining why this second interview was necessary, or denying that it occurred" is absurd. Clearly there is no evidence in the record explaining the "second interview" because that is a figment of Plaintiff's own imagination. As set forth above, the record is clear that Plaintiff is the *only* person who apparently considered the meeting with the accountants to be a "second interview." There is no way for Defendants' to explain Plaintiff's self-serving fabrications.

    Similarly, Defendants have no reason to deny that the accountants from Eisner & Lubin met with Plaintiff after her hiring to discuss her experience and qualifications. After all, according to Plaintiff's own testimony, she was hired to computerize LPR's accounting system. (Laurin dep. pp. 35-36, 566). Thus, it was entirely logical, and appropriate, for LPR's

accountants to meet with Plaintiff and discuss her experience and qualifications relating to that task.  The testimony on this point is clear and unequivocal:

> Q: Mr. Pokoik's internal accounting system was not computerized at that time, correct?
>
> A: Correct.
>
> Q: And you were brought in to help get Mr. Pokoik's accounting system computerized; do I have that correct?
>
> A: Correct.[1]
>
> Q: When you spoke with the two accountants, did they want to know your proficiency with respect to computerized accounting?
>
> A: Yes.
>
> Q: And so you told them about your abilities in that regard, true?
>
> A: True.

(Laurin dep. pp. 566-67).  Clearly, there was nothing sinister about the post-hiring meeting between the accountants and Plaintiff, nor do any inferences need to be drawn to establish that it was, in no way, a "job interview" over which SPMC had any control.

Finally, Plaintiff's reliance upon the fact that the accounting firm of Eisner & Lubin had both LPR and SPMC for clients as evidence that the accountants were somehow acting on behalf of SPMC when they met with her in 1994 is without any rational basis.  Clearly, the fact that an accounting firm services multiple clients does not mean that it acts on behalf of one client when it conducts a meeting with a different client.  Simply stated, there is absolutely no evidence in the

---

[1] Plaintiff's current argument that a "reasonable inference" could be drawn that she was hired to perform duties for both LPR and SPMC is belied by her own unequivocal deposition testimony regarding the reason for her hiring. (Laurin dep. pp. 35-36, 566).

record which would support a finding, or even a question, that the Eisner & Lubin accountants were working on behalf of SPMC when they met with Plaintiff in her LPR office in 1994.

In sum, Plaintiff's self-serving testimony regarding the work she allegedly performed for SPMC and her alleged interaction with SPMC employees, even if accepted, is insufficient as a matter of law to establish the existence of an integrated enterprise. See Murray v. Miner, 74 F.3d 402, 494 (2d Cir. 1996) (control of labor relations, not interrelation of operations, is the "central concern" in determining existence of integrated enterprise); see also Cook, 69 F.3d at 1240. That testimony does not answer the "critical question" of what entity made the final employment decisions relating to Plaintiff. As set forth herein, and more fully in Defendants' Memorandum in support of the instant motion, the only *evidence* in the record on that point is that all of the important employment decisions relating to Plaintiff were made by Lee Pokoik through LPR.[2] (See Laurin dep. p. 43-44 (hiring); p. 44 (payment of salary), and pp. 259-61 (termination)).

II

**PLAINTIFF FAILED TO SATISFY HER BURDEN
OF ESTABLISHING THAT, EVEN IF IT EXISTED,
THE INTEGRATED ENTERPRISE MET THE
MINIMUM STATUTORY THRESHOLDS**

It is undisputed that Plaintiff has the burden of proving that a Defendant, or group of Defendants, has a sufficient number of employees to meet the statutory thresholds for coverage under Title VII and the ADEA. Da Silva v. Kinsho International Corp., 229 F.3d 358, 365-66

---

[2] Plaintiff's reliance upon Bernhardt v. Interbank of New York, 18 F. Supp.2d 218 (E.D.N.Y. 1998), as support for her argument that her inadmissible speculation and conjecture could be used to avoid summary judgment is misplaced. A reading of Bernhardt reveals that the issue there was whether *hearsay* testimony in an affidavit could be used to oppose a motion for summary judgment. In finding that, in some cases, such testimony could be used, the Court focused on the *content* of the hearsay statements and concluded that because the speakers of those out of court statements were going to testify at trial, the "content" of the hearsay testimony could be used in opposing the motion despite the fact that it was in inadmissible form. Such a holding has no relevance to the case at bar because there is no issue regarding hearsay testimony. The inadmissible testimony in this case is in the form of speculation and conjecture – testimony that would be equally as inadmissible at trial.

(2d Cir. 2000). Here, Plaintiffs have produced *no evidence* establishing that LPR and SPMC, even if combined, would satisfy the 15 employee threshold under Title VII or the 20 employee threshold under the ADEA. Remarkably, rather than attempt to do so in response to the instant motion, Plaintiff simply asserts that she "had no burden" to produce such evidence in response to Defendants' summary judgment motion. (Pl. Memo p. 8). It is clear, however, that the Second Circuit imposes such a burden. See Da Silva, 229 F.3d at 365-66.

The Court's finding of questions of fact regarding the existence of an integrated enterprise between LPR and SPMC, even if accepted, is not sufficient to carry the day for Plaintiff in the absence of evidence that those two entities, when combined, would meet the minimum statutory thresholds to be deemed employers under Title VII and/or the ADEA. The case of Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976 (10th Cir. 2002), relied upon by Plaintiff, does not dictate a different result. There, the Title VII plaintiff had produced some evidence that the defendant had more than 15 employees – thus meeting the minimum threshold. In its summary judgment motion, the defendant argued that some of the "employees" that plaintiff was counting were independent contractors and should not be counted. The court concluded that questions of fact existed as to whether the individuals in question were "employees" and, as a result, denied the motion for summary judgment.

Here, Plaintiff has not produced *any* evidence to establish that LPR and SPMC, even when combined, have sufficient number of employees to meet the minimum thresholds.[3] In fact, Plaintiff has not produced *any* evidence regarding the number of employees of SPMC during the time in question. That is her burden. See Da Silva, 229 F.3d at 365-66 (plaintiff's failure to establish 15 employee threshold warrants dismissal of Title VII claim on the merits); see also

---

[3] Plaintiff's assertion that Gary Rappaport was an employee of LPR is belied by the evidence in the record establishing that he was an independent contractor providing legal services to the Company. (Laurin dep. ppp. 53-54; Pokoik dep. p. 134; Pokoik 12/18 dep. p. 23).

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 1514 (1986) ("the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). Rather than produce such evidence, Plaintiff simply asserts that because SPMC did not argue that it was not an employer under Title VII in its motion papers, the company must have at least 15 employees. Clearly, Mr. Pokoik and LPR are not bound by the arguments made (or not made) by SPMC in support of their motion, especially on an issue, such as this, where it is the Plaintiff who has the burden of production.

As the Supreme Court stated in Anderson, in order to defeat a motion for summary judgment, a plaintiff must present "evidence from which a jury might return a verdict in his favor." Anderson, 106 S. Ct. at 1514. Here, because Plaintiff has produced no evidence regarding the number of employees employed by the alleged integrated enterprise of LPR and SPMC during the time in question – no jury could possibly return a verdict in her favor on the issue of whether the minimum statutory thresholds were met. Plaintiff's failure to produce evidence regarding the number of employees in the alleged integrated enterprise precluded the Court from making the necessary finding that a jury could conclude at trial that the minimum thresholds were met. The law is clear that the absence of such evidence, and such a finding by the Court, warrants reconsideration of the Court's Memorandum and Order and the dismissal of Plaintiff's Title VII and ADEA claims on the merits. See Da Silva, 229 F.3d at 365-66.

## CONCLUSION

For the reasons set forth herein, as well as those contained in Defendants' Memorandum of Law in support of the instant motion, Defendants Lee Pokoik and Lee Pokoik Realty respectfully submits that their motion for reconsideration/reargument be granted and summary judgment awarded on Plaintiff's Title VII and ADEA claims and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

BOND, SCHOENECK & KING, PLLC

_____
By:  James P. Clark  (JC 0824)
Attorneys for Defendants Lee Pokoik
 And Lee Pokoik Realty
1399 Franklin Avenue, Ste. 200
Garden City, New York  11530
(516) 267-6314