```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
                                    :
ELEANOR LAURIN,                     :
            Plaintiff               :
                                    :
       -against-                    :   02 Civ. 1938 (LMM)
                                    :   MEMORANDUM AND ORDER
LEE POKOIK, LEE POKOIK REALTY,      :
and STEINBERG & POKOIK MANAGEMENT   :
CORP.,                              :
            Defendants.             :
                                    :
-----------------------------------X
```

McKENNA, D.J.

Eleanor Laurin ("Laurin" or "Plaintiff") brings this action against Lee Pokoik ("Pokoik"), Lee Pokoik Realty ("LPR"), and Steinberg & Pokoik Management Corporation ("SPMC")(collectively "defendants") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and related state and local human rights laws, alleging sexual harassment, age discrimination, retaliation, and failure to timely comply with a request for the production of retirement plan documents. Plaintiff seeks compensatory and punitive damages and, in the case of the alleged ERISA violation, statutory penalties, as well as costs and fees.

Defendants now move for summary judgment on Laurin's retaliation claims (counts V through VII of the Amended Complaint) contending that (1) Laurin cannot make out a *prima*

*facie* case of retaliation and (2) even if she can, she cannot show that Pokoik's legitimate non-discriminatory reason for terminating her was pretextual. Additionally, SPMC moves for summary judgment precluding its liability for punitive damages, or, in the alternative, asks this Court to bifurcate the trial to deal with liability and damages separately. For the reasons set forth below, defendants' motions are denied.

## Background

The facts of this case are substantially set forth in <u>Laurin v. Pokoik</u>, No. 02 Civ. 1938, 2004 WL 513999 (S.D.N.Y. Mar. 15, 2004), familiarity with which is assumed. The following background information bears on Laurin's retaliation claims and on SPMC's potential punitive damages liability.

Eleanor Laurin began her employment with LPR as an Office Manager in October of 1994. (Lee Pokoik and LPR's Local Rule 56.1 Statement, Dec. 30 2004, "LPR 56.1 Stmt." ¶ 1) Her duties included reconciling certain checking accounts for entities in which Pokoik had a financial interest. Plaintiff's Local Rule 56.1 Counter-statement to LPR 56.1 Stmt., "Pl. 56.1 Ctr-Stmt.-LPR." ¶ 2; LPR 56.1 Stmt. ¶ 2) There is a dispute as to whether she was responsible for the payment of real estate taxes on LPR properties, and whether other LPR employees shared those responsibilities. (<u>Id.</u>) Laurin claims that Pokoik sexually harassed her from the first few days of her employment, until a

few weeks prior to her termination. (Affirmation of Laurent S. Drogin addressing Retaliation, Feb. 14, 2005, "Drogin Aff.-Ret." Ex. A at 284, 664, 428-30, 436-7, 445-8, 450-1, 458-9, 463-6, 499-500, 502-6) She also alleges that Pokoik maintained a dress code that forced the women working at LPR to wear short dresses or skirts, but not pants. (Drogin Aff.-Ret. Ex. A at 436-7; Affirmation of Laurent S. Drogin addressing Punitive Damages, Feb. 14, 2005, "Drogin Aff.-PD" Ex. E at 68-69; Ex. F at 62-64) She also claims that Pokoik specifically made her wear stockings, a garter belt, and red nail-polish to work each day. (Drogin Aff.-Ret. at 436-7, 441, 664) According to Laurin, Pokoik frequently made sexual jokes and comments in the office, made sexual advances toward her, and groped her on several occasions. (Id. at 436-7, 447, 463-4) She claims that she rebuffed these advances, but Pokoik persisted in making them. (Id. at 436-7, 466-7)

After years of Pokoik's alleged harassment, Laurin avers that she complained to Gary Rappaport, SPMC and LPR's attorney, on two occasions. (Id. at 906-916) She also claims to have complained once to Michael Steinberg, one of the co-owners of SPMC, about Pokoik's alleged harassment. (Id.) However, according to Laurin, Pokoik's harassment continued for several years after those complaints, during which Pokoik made advances and Laurin rebuffed them. (Id.) She claims that the harassment

became less frequent after a new female employee was hired. (Pl.'s Opp'n-Ret. at 10) In March of 2001, Laurin allegedly walked in on Pokoik engaged in sexual intercourse with the new employee in the office. (Id.) After that, Laurin claims that Pokoik harassed her only a few more times over the course of three months, and then terminated her employment in June of 2001. (Id.)

In Laurin's last year of employment with LPR, the real estate taxes due on one of Pokoik's properties for the period of June to December of 2000 went unpaid. (Affidavit of Howard M. Miller, Dec. 30, 2004, "Miller Aff." Ex. D at 190) As a result, Pokoik had to pay a penalty of $6,675.00 for the late tax payment. (Miller Aff. Ex. D) He claims it was Laurin's job to pay the real estate taxes on his behalf, that she failed to make the payment, and that she created a fictitious ledger entry to conceal her failure to pay the taxes. (Id. at 189-95) Pokoik avers that he fired Laurin for concealing her failure to pay the taxes. (Id.)

Laurin brought the instant lawsuit on March 8, 2002, alleging, inter alia, sexual harassment, age discrimination, and retaliation. (Declaration of Douglas E. Motzenbecker, Dec. 19, 2002, "Motzenbecker Decl." Ex. A)

**Discussion**

A.  <u>Standard of Review</u>

Summary judgement "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" <u>Gayle v. Gonyea</u>, 313 F.3d 677, 682 (2d Cir. 2002) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Id.</u>  In weighing a motion for summary judgment, ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  See <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir. 1990).  However, "the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(citing Fed. R. Civ. P. 56)(emphasis omitted).  "[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." <u>Kulak v. City of New York</u>, 88 F.3d 63, 71 (2d

Cir. 1996)(citations omitted).

Although courts are understandably cautious about granting summary judgment in cases where motive, intent or state of mind is at issue, <u>Montana v. First Fed. Sav. and Loan Ass'n of Rochester</u>, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment -- avoiding protracted, expensive and harassing trials -- apply no less to discrimination cases than to . . . other areas of litigation." <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir. 1985). Consequently, once the moving party has met its burden, the nonmoving party in a Title VII retaliation action must come forward with evidence sufficient for a reasonable fact-finder to return a verdict in his or her favor. <u>See</u> <u>McDonnell-Douglas v. Green</u>, 411 U.S. 792, 802 (1973).

    B.   <u>Title VII Retaliation Claim</u>

Title VII provides that it "shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful practice by this subchapter. . . ." 42 U.S.C. § 2000e-3(a)(2005). "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions towards an employee, whether or not it was the sole cause.'" <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003)(citing <u>Cosgrove v. Sears Roebuck & Co.</u>, 9 F.3d 1033, 1039 (2d Cir. 1993)).

> [Courts] evaluate retaliation claims under the burden shifting rules established in <u>McDonnell-Douglas v.</u>

-6-

> Green. . . .  In the context of a motion for summary
> judgment, the plaintiff must first demonstrate a prima
> facie case of retaliation, after which the defendant
> has the burden of pointing to evidence that there was a
> legitimate, nonretaliatory reason for the complained of
> action.  If the defendant meets its burden, the
> plaintiff must demonstrate that there is sufficient
> potential proof for a reasonable jury to find the
> proffered legitimate reason merely a pretext for
> impermissible retaliation.

Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 443 (2d Cir. 1999)(internal citations omitted); see Quinn v. Green Tree Credit Corp., 159 F.3d 759, 763 (2d Cir. 1998)(applying the same standards to both Title VII and New York Human Rights Law).

### 1. Laurin's *Prima Facie* Case of Retaliation

To establish a *prima facie* case for retaliation, Laurin must demonstrate "[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action." Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996).  The plaintiff's burden of presenting a *prima facie* case of discrimination is "minimal."  James v. N.Y. Racing Ass'n, 233 F.3d 149, 153 (2d Cir. 2000).  In the instant motion, defendants attack each element of Laurin's *prima facie* case.

#### a. Protected Activity

A "protected activity" is an act that opposes any perceived discriminatory practice made unlawful under Title VII.  See 42 U.S.C. § 2000e-3(a) (2005); see also Sumner v. U.S. Postal Serv.,

899 F.2d 203, 209 (2d Cir. 1990)(explaining that "a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed"). "Informal as well as formal complaints constitute protected activity." <u>Knight v. City of New York</u>, 303 F. Supp. 2d 485, 496 (S.D.N.Y. 2004)(citing <u>Sumner</u>, 899 F.2d at 209). However, to be a protected activity, "the complainant must put the employer on notice that the complainant believes that discrimination is occurring." <u>Bass v. NYNEX</u>, No. 02 Civ. 5171, 2004 U.S. Dist. LEXIS 17378, at *7 (S.D.N.Y. Sept. 2, 2004)(citation omitted).

Here, Laurin asserts that defendants retaliated against her for engaging in four protected activities: (1) complaining to Michael Steinberg and George Rappaport about Pokoik's policies and behaviors; (2) informally, but directly, complaining to Pokoik by "rebuffing" his sexual advances; (3) informally, but directly, complaining to Pokoik by acceding to his sexually harassing conduct in some instances; and (4) walking in on Pokoik and a receptionist while they were engaged in sexual intercourse in the office. (Pl. Opp'n-Ret. at 3-5, 10) Defendants do not dispute that an informal complaint to a superior is a protected activity, but challenge the other three protected activities Laurin proffers. (LPR Supp. Mem. at 6-8)

On the issue of whether rebuffing sexual advances

constitutes a protected activity, the parties appropriately note that there is a split of authority within this district. On the one hand, several cases have concluded that "even the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances." Del Castillo v. Pathmark Stores, Inc., 941 F. Supp. 437, 438-9 (S.D.N.Y. 1996). On the other hand, several cases have also concluded "that rejecting sexual advances from an employer does constitute 'protected activity.'" Little v. Nat'l Broadcasting Co., 210 F. Supp. 2d 330, 386 (S.D.N.Y. 2002). Here, Laurin's retaliation claim appears to duplicate her sexual harassment claim in large part. However, the alleged harasser was Pokoik, who owned all of LPR and part of SPMC. (See Miller Aff. Ex. D at 189) Therefore, Pokoik had no supervisor for Laurin to complain to, only Steinberg, his partner, and Rappaport, his attorney. Defendants had no formal policies with regard to sexual harassment, and no formal mechanism in place for making or addressing sexual harassment complaints. (Drogin Aff.-Ret. Ex. B at 444) Given the circumstances, declining Pokoik's advances was one of very few options that Laurin had for opposing sexual harassment. Therefore, this Court follows Little in concluding that Laurin's repeated refusals of Pokoik's sexual advances constituted protected activities within the meaning of 42 U.S.C. § 2000e-

3(a).

Laurin's other two alleged protected activities fail to satisfy the requirement that an activity "must put the employer on notice that the complainant believes that discrimination is occurring" in order to be protected. Bass, 2004 U.S. Dist. LEXIS 17378 at *7. First, acceding to sexual harassment does not put the employer on notice that plaintiff believes unlawful discrimination is occurring. Plaintiff points out that under the sex discrimination statute, 42 U.S.C. § 2000e-2, a "supervisor's conduct is equally unlawful . . . whether the employee submits or not." Karibian v. Columbia Univ., 14 F.3d 773, 778 (2d Cir. 1994). However, that statute protects people from gender discrimination and sexual harassment, while § 2000e-3 protects people from being discriminated against for *opposing* perceived discrimination. Acceding to sexual harassment does not oppose it, and therefore cannot constitute a protected activity under § 2000e-3. Finally, Laurin's walking in on Pokoik while he was engaged in sexual intercourse with a receptionist cannot constitute a protected activity on these facts. She does not assert that any of her actions during or after that event opposed the discrimination she alleges.

Thus, Laurin has adequately evidenced that she engaged in a protected activity.

                b.    Employer Must Know About Protected Activity

In order to prevail on her retaliation claims, Laurin must prove that Pokoik had actual knowledge that she was engaged in protected activity. See Phillipeaux v. Fashion Inst. Tech., No. 93 Civ. 4438, 1996 U.S. Dist. LEXIS 4397 at *16 (S.D.N.Y. Apr. 8, 1996)(citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)). Laurin must demonstrate not only that LPR and/or SPMC as an entity knew of her engagement in the protected activities, but also that the actual decisionmaker(s) knew about her protected activities as well. See id. Defendants argue that Pokoik never knew about Laurin's complaints to Steinberg and Rappaport. (LPR Supp. Mem. at 8) Laurin does not allege that Pokoik knew about her complaints to Steinberg and Rappaport, but there is a dispute as to whether Pokoik was the sole decisionmaker concerning Laurin's employment. (SPMC's Local Rule 56.1 Statement, Dec. 30 2004, "SPMC 56.1 Stmt." ¶ 10; Plaintiff's Local Rule 56.1 Counter-statement to SPMC 56.1 Stmt.,Feb. 14, 2005, "Pl.'s 56.1 Ctr-Stmt.-SPMC" ¶ 10) She argues that her complaints to Steinberg and Rappaport were part of a series of complaints to them and to Pokoik about the sexual harassment that she endured. (Drogin Aff.-PD Ex. F at 911-16) Taken together, she claims, her complaints to all three eventually led to her termination. Her argument presents several genuine issues of material fact. In this Court's March 15, 2004 opinion, defendants' motion for summary judgment was denied

because there were issues of fact regarding the relationship between LPR and SPMC, and those entities' relationship with Laurin. Given those issues, and the relationship between Steinberg, Rappaport, and Pokoik, this Court cannot conclude that Laurin's "employer" was unaware of her complaints to Steinberg and Rappaport.

With regard to Pokoik's actual knowledge of Laurin rebuffing his advances, a multitude of factual issues preclude summary judgment. Laurin alleges that Pokoik imposed a dress code on her, made sexual jokes and comments to her, and physically groped her on several occasions. (Drogin Aff.-Ret. Ex. A at 436-7, 441, 664) She claims that on many of the occasions she rebuffed his behaviors and advances, and his actions continued. (Id. at 436-7, 447, 463-4) A reasonable trier of fact could conclude that Laurin's refusal of Pokoik's advances ultimately motivated him to terminate her employment.

### c. Adverse Employment Action

The third part of a *prima facie* case of retaliation is that plaintiff suffered an adverse employment action. Laurin claims that she suffered two adverse employment actions: a persistent hostile work environment, and the termination of her employment. (Pl. Opp'n Mem.-Ret. at 5-8) Defendants do not contest the assertion that such actions constitute adverse employment actions. (LPR Supp. Mem. at 8-9)

d.  Causal Connection

To satisfy the final part of a *prima facie* case of retaliation, plaintiff must show a causal connection between protected activity and the adverse employment action.

> [P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.

Gordon v. New York Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000).  Regarding her termination, Laurin complained to Steinberg and Rappaport several years prior to her termination. (Motzenbecker Decl. Ex. F. at 728-732)  Therefore, her complaints to Steinberg and Rappaport were not close in time to her termination.  Nonetheless, given the continuous and persistent nature of the alleged hostile work environment, this Court will not conclude, as a matter of law, that there is no nexus between the complaints to Steinberg and Rappaport, and Laurin's termination.  As to Laurin's complaints to Pokoik, the last occurred a short time before her termination, raising issues of fact as to whether there is a causal nexus between her complaints and her termination.  See DeCintio, 821 F.2d at 115 (stating that proof of a causal connection can be established "indirectly by showing that the protected activity was followed closely by discriminatory treatment").  Regarding the alleged hostile work

-13-

environment, Laurin presents an ongoing cycle of sexual harassment, followed by her refusal to submit to it. Likewise, Laurin's complaints to Steinberg and Rappaport occurred during the time that she claims the hostile work environment persisted. Therefore, a reasonable trier of fact could find that a causal connection exists between the protected acts, complaining to others and rebuffing advances, and the subsequent hostile work environment and termination.

Thus, plaintiff has made out a *prima facie* case of retaliation against defendants.

   2. Legitimate Non-Retaliatory Reason for Termination

"After [plaintiff makes out a *prima facie* case of retaliation] the defendant has the burden of pointing to evidence that there was a legitimate, nonretaliatory reason for the complained of action." Richardson, 180 F.3d at 443. Here, defendants claim that Pokoik terminated Laurin because she failed to make a tax payment on Pokoik's behalf and then concealed her failure in LPR's ledger. Pokoik, in particular, asserts that he fired her because she failed to make the payment, which cost him a $6,675 penalty, and then concealed that failure by entering the tax amount in the LPR ledger as a "Bank Credit Memo." (See LPR Supp. Mem. at 10-12) Pokoik has presented documents that he claims are the late tax bill, the penalty assessed, and the ledger entry. (Miller Aff. Exs. E-H) Pokoik also testified that

plaintiff was the only LPR employee with access to the computer program that allowed for entries to the ledger. (Id. Ex. D) Therefore, defendants have met their burden of presenting a legitimate non-retaliatory reason for Laurin's discharge.

"If the defendant meets its burden [of demonstrating a legitimate, nonretaliatory reason for the complained of action], the plaintiff must demonstrate that there is sufficient potential proof for a reasonable jury to find the proffered legitimate reason merely a pretext for impermissible retaliation." Richardson, 180 F.3d at 443. Laurin argues that the late tax payment is merely a pretext, and that the real reason that Pokoik fired her was retaliation for her complaints to Rappaport and Steinberg and for rebuffing his sexual advances. Her theory is that since she continually declined his advances, Pokoik brought in a new employee who was more receptive to them. A few months after Laurin saw the new employee engaged in intercourse with Pokoik, he fired Laurin, who was unwilling to submit to his advances. Therefore, she claims, he fired her in retaliation for declining his advances. Additionally, she alleges that Pokoik only raised the issue of unpaid taxes for purposes of this litigation,[1] and that there were several other people involved in

---

[1] Plaintiff's motion to exclude the Unemployment Insurance Notice (Reply Affidavit of James P. Clarke, Mar. 17, 2005, Ex. B) is granted because presentation of that document "in any court in any action" is prohibited under N.Y. Lab. Law § 537 (McKinney 2005). The statutory language is clear and unambiguous, which

paying the real estate taxes and keeping track of the accounting. (Pl.'s Opp'n-LPR at 11-12)  There are many material issues of fact that cannot be resolved on this motion.

Therefore, defendants' motion for summary judgment on counts V through VII of plaintiff's Amended Complaint is denied.

B.   Punitive Damages

1.   Exclusion of SPMC from Punitive Damages Liability

SPMC argues that it should not be liable for punitive damages because Laurin was not its employee, and even if she were, SPMC had no notice of the alleged sexual harassment, age discrimination, or retaliation.  Defendants attack Laurin's punitive damages claims on evidentiary rather than purely legal grounds.  (SPMC Supp. Mem. at 11-15)  Preliminarily, SPMC argues that Laurin cannot demonstrate intent and venal misconduct by SPMC, as required by Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999).  To the extent that SPMC's arguments attempt to separate the behavior of Lee Pokoik from that of SPMC, this Court will not address them.  Such arguments raise the same issues of fact upon which SPMC's prior motion for summary judgment was denied, i.e., whether LPR, SPMC, and Pokoik are separate entities or a single employer with respect to Laurin.  See Laurin v. Pokoik, 2004 WL 513999 at *1.  That issue can only be resolved

---

means the Court need not investigate the purpose of the statute, as defendants suggest.

after a factual determination of which entities were Laurin's employer.

Next, without making a formal motion to preclude or strike, SPMC asks this Court not to consider Laurin's deposition testimony describing her complaints to Rappaport and Steinberg. (Id.)  First, SPMC claims that Laurin testified that she never told anyone about Pokoik's harassing behavior.  (Id. at 12)(citing Drogin Aff.-Ret. Ex. A at 471:6-11)  Then, SPMC asserts that, after Laurin had the opportunity to speak to her attorney, she changed her testimony by stating that she complained to Steinberg and Rappaport about Pokoik's behavior "half a dozen times" each.  (Id. at 12)(citing Drogin Aff.-PD Ex. A at 730:22-732:19)  Finally, SPMC alleges that when asked to describe specific instances when she complained to Steinberg and Rappaport, she could recall only two complaints to Rappaport and one to Steinberg.  (Id. at 13)(citing Drogin Aff.-PD Ex. F at 916:18-917:13, 919, 921:3-15)  SPMC contends that the testimony about Laurin's complaints to Rappaport and Steinberg should be excluded because it was contradictory, and only changed after Laurin had the opportunity to speak to her attorney between deposition sessions.  (Id.)

In view of the issues of fact concerning the relationship between SPMC, LPR, Pokoik, and Laurin, the exclusion of Laurin's testimony about her complaints to Steinberg and Rappaport would

not result in summary judgment for SPMC.

Even if this were a formal motion to preclude or strike Laurin's testimony, and were of consequence to the summary judgment determination, the Court would deny the motion. SPMC asks this Court to apply the "sham affidavit rule" to strike Laurin's testimony and grant summary judgment on the issue of punitive damages. "Under the 'sham' affidavit rule, a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Hambleton Bros. Lumber Co. v. Balkin Enters.</u>, 397 F.3d 1217, 1225-6 (9th Cir. 2005). SPMC cites <u>Hambleton Bros.</u>, which extended the "sham" affidavit rule to written corrections to deposition testimony in an errata sheet, and now asks this Court to extend the rule to contradictory deposition testimony. (SPMC Reply at 5-8) This Court will not extend the rule to contradictory deposition testimony in this case. During a deposition, a deposing attorney has options that are not available upon receipt of an affidavit or errata sheet. The most obvious option is the ability to examine the witness. Here, SPMC's attorney asked Laurin about the alleged change in her testimony, and she explained that her original answer pertained to speaking with people outside of the office. (Motzenbecker Decl. Ex. F at 714-719) That answer, if anything, merely raises an issue of fact. The remainder of SPMC's argument on this issue asks the Court to evaluate the

aforementioned statements and assess Laurin's credibility.  Trial is the appropriate procedural context for assessing the credibility of evidence, not summary judgment.  See Agosto v. INS, 436 U.S. 748, 756 (1978) ("[A] district court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial").

Therefore, SPMC's motion for summary judgment on the issue of punitive damages is denied.

### 2. Bifurcation of Trial

SPMC further requests that if its motion for summary judgment on punitive damages liability is denied, that the court bifurcate the trial to address punitive damages and liability separately.  "The decision to bifurcate a trial into liability and damages phases . . . is 'firmly within the discretion of the trial court under Fed. R. Civ. P. 42(b).'"  Katsaros v. Cody, 744 F.2d 270, 278 (2d Cir. 1984)(citations ommitted).  Although SPMC believes that bifurcating the trial would avoid prejudice to it, any prejudice avoided would be minimal in comparison to the strain that bifurcation would place on the expeditious completion of trial.  Therefore, this Court denies SPMC's motion to

bifurcate the trial.

## Conclusion

Laurin has presented evidence sufficient to raise questions of fact as to Pokoik's proffered legitimate, non-retaliatory reason for her termination, and the ultimate issue of retaliation. Likewise, there are issues of fact regarding the relationship between SPMC, LPR, Pokoik, and Laurin, which must be resolved before punitive damages liability can be assessed. Finally, any potential prejudice to SPMC does not warrant bifurcating the trial. Therefore, defendants' motions for partial summary judgment are denied.

SO ORDERED.

Dated: April 18, 2005
       New York, New York

*[signature]*
Lawrence M. McKenna
U.S.D.J.