UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

ELEANOR LAURIN,                          :

                    Plaintiff,           :    02 Civ. 1938 (LMM)

          - against -                    :    MEMORANDUM AND ORDER

LEE POKOIK, LEE POKOIK REALTY, and  :
STEINBERG & POKOIK MANAGEMENT CORP.,
                                         :
                    Defendants.          :

------------------------------------x

McKENNA, D.J.

          The parties' motions in limine are disposed of as

follows:[1]

## 1.

          Plaintiff seeks to exclude the testimony of Frank D.

Tinari, whom Steinberg plans to call as an expert witness on

damages, on the ground that Steinberg failed to disclose its

intention to call an expert witness on damages or to identify

Tinari in a timely manner.  That disclosure was first made on

December 20, 2004, by delivery of a copy of Mr. Tinari's report.

          Steinberg argues that, although Magistrate Judge Eaton

had previously set September 30, 2004 as the end date for expert

discovery, plaintiff amended her Fed. R. Civ. P. 26(a)(1)

---

[1] Throughout, plaintiff Eleanor Laurin is referred to as
"plaintiff"; defendants Lee Pokoik and Lee Pokoik Realty, collectively,
as "Pokoik"; and defendant Steinberg & Pokoik Management Corp. as
"Steinberg."

disclosures so as to specify her computation of damages on October 18, 2004. Steinberg also points to Judge Eaton's order of November 29, 2004, in which, in response to a November 11, 2004 joint letter by the parties relating to outstanding discovery disputes, he stated, among other things, that: "Any information (including an expert's report) that is produced by any party after December 20, 2004 will be precluded from that party's direct case unless a strong showing is made to Judge McKenna that said party made diligent efforts to locate that information prior to December 20 and to make sure that it was produced promptly to the adversary." (Mem. & Order, Nov. 29, 2004, at 3.)

In the first place, it seems doubtful that Judge Eaton, in including the parenthetical phrase "(including an expert's report)" in the quoted sentence, had in mind that all parties were free to serve by December 20 as many expert's reports on each other as they chose. Since the quoted sentence is in the portion of Judge Eaton's Memorandum and Order that responds to the parties' joint letter of November 11, 2004, it is rather likely that he had in mind only the Rule 35 report on plaintiff prepared by another of Steinberg's experts which had not, at the time, been produced. (Joint Letter to Judge Eaton, Nov. 11, 2004, at 4, para. 14).

In the second place, it is not apparent how Steinberg could have had an expert address plaintiff's damage calculations

prior to plaintiff's specification of those calculations on October 18, 2004.

Why neither Steinberg nor plaintiff brought the situation to Judge Eaton's attention is puzzling. Had either done so, however, the Court believes that Judge Eaton would, in view of the time when the computation of damages was served, have allowed Steinberg an opportunity to have an expert address that computation. This Court believes that is the proper course. Accordingly, plaintiff's motion for exclusion of Mr. Tinari's testimony is denied.[2]

### 2.

Plaintiff also seeks a ruling on the assertion of the attorney-client privilege in connection with conversations between defendant Pokoik and Gary Rappaport, described by plaintiff as "the in-house general counsel for defendant Lee Pokoik Realty . . . from approximately 1991 through 2001, and .. . . the in-house general counsel for [Steinberg] from 1994 through the present." (Pl. Mem. at 4.) In response, Pokoik, in a letter dated August 5, 2005, has set forth a resolution -- "neither party may offer or elicit testimony from Mr. Rappaport regarding his communications as in-house counsel with Mr. Pokoik" (Letter, Howard M. Miller, Esq. to Court (Aug. 5, 2005) at 2), while either party may ask Mr.

---

[2] Steinberg is to make Mr. Tinari available for a deposition upon request of plaintiff.

Rappaport "about what he personally observed or did not observe."
(Id. at 1.)  Plaintiff does not seek any further resolution.  (Pl.
Reply Mem. at 1 n.1.)

### 3.

Pokoik seeks to exclude the testimony of Jacqueline
Peiffer, Mary Ann Shea, Stephanie Scott, Janice Deluca, and Carol
Tanis, on grounds of irrelevance and/or the danger of unfair
prejudice under Fed. R. Evid. 403.  Plaintiff invokes id. 404(b).
In considering this aspect of Pokoik's motion, the Court assumes
the witnesses will testify as described in Plaintiff's Memorandum
of Law in Opposition to Defendant Pokoik's Motion for Rulings in
Limine.

> In order to prevail on a hostile environment sexual
> harassment claim under Title VII, a plaintiff must
> establish two elements.  First, she must prove that
> the harassment was "sufficiently severe or perva-
> sive to alter the conditions of the victim's
> employment and create an abusive working
> environment."  "The incidents must be more than
> episodic; they must be sufficiently continuous and
> concerted in order to be deemed pervasive."  "[O]ne
> of the critical inquiries in a hostile environment
> claim must be the environment.  Evidence of a
> general work atmosphere ...--as well as evidence of
> specific hostility directed toward the plaintiff--
> is an important factor in evaluating the claim."

Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)
(quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993),
Carrero v. New York City Housing Auth., 890 F.2d 569, 577 (2d Cir.
1989), and Hicks v. Gates Rubber Co., 833 F.2d 1406, 1415 (10th
Cir. 1987) (other citations omitted) (emph. in original)).

In Perry, the district court had excluded, on a pretrial motion in limine, "evidence of harassment not witnessed personally by [plaintiff] Perry." 115 F.3d at 150. The Court of Appeals found that ruling "troubling," id., and was "puzzled . . . by the [district] court's view that if there was sexual harassment of other women Ethan Allen employees but that harassment was not witnessed by Perry, the evidence was 'irrelevant.'" Id. at 151 (quoting district court). While the Court of Appeals found the exclusion to be error, however, it concluded that, in the particular circumstances, the error was harmless. Id. at 151-52. Perry makes it clear, on the other hand, that, in the Second Circuit at least, a plaintiff's evidence in a hostile environment sexual harassment claim is not limited to evidence of harassment that the plaintiff personally witnessed or was informed of during the period in which the plaintiff herself claims to have been harassed. (Cf. Pokoik Mem. at 4.) Evidence of the harassment of others (even if not known to the plaintiff), is relevant to the issue "whether there was a pervasive hostile environment." Perry, 115 F.3d at 151.

The testimony of Jacqueline Peiffer is excluded. It is not disputed that Ms. Peiffer left the employ of Lee Pokoik Realty in early 1991 and that plaintiff was not employed until October of 1994.[3] The testimony of Ms. Peiffer thus relates to a time period

---

[3] Plaintiff's employment was terminated on June 26, 2001.

too much earlier than the conduct of which plaintiff complains to be more than marginally relevant, if that, even were it otherwise admissible under Fed. R. Evid. 404(b); such probative value as it may have is substantially outweighed, see id. 403, by the danger of unfair prejudice, in that it would be perceived to bear only on Mr. Pokoik's character to show action in conformity therewith.

The testimony of Mary Ann Shea is excluded for substantially the same reasons as that of Ms. Peiffer. The testimony relates to an event (described by plaintiff in Pl. Mem. in Opp. at 6, para. 2) that also involves Ms. Peiffer, and so precedes plaintiff's employment by more than three years. The exclusion includes exclusion of testimony relating to the arbitration (described by plaintiff in Pl. Mem. in Opp. at 6, para. 3).

The testimony of Janice Deluca is excluded in part: that portion of her anticipated testimony that relates to the incident in which Ms. Peiffer and Ms. Shea were involved (see Pl. Mem. in Opp. at 6, para. 2) is excluded for substantially the same reasons as that of Ms. Peiffer and Ms. Shea; testimony by Ms. Deluca to the effect that she was offensively touched by Pokoik (see Pokoik Mem. at 11; Pokoik Reply Mem. at 7), and other testimony relating to whether or not the defendants' offices were the home of a pervasive hostile environment in the sexual harassment sense while plaintiff

was employed, is not excluded, whether or not such matters as she may testify to were made known to plaintiff.

The testimony of Stephanie Scott is excluded, perhaps with the consent of plaintiff, whose opposing memorandum does not respond to the moving memorandum of Pokoik seeking the exclusion of Ms. Scott's testimony.   It is nevertheless correct that a consensual sexual relationship is not relevant.[4]

Testimony regarding the activities of Lee Pokoik and Carol Tanis in the office suite, to plaintiff's observation of which plaintiff apparently will testify, is not excluded; testimony as to a prior consensual relationship between Mr. Pokoik and Ms. Tanis, or between Robert Greenberg and Ms. Tanis, as described by plaintiff, will be excluded.   As noted, consensual sexual relationships are not relevant, but conduct affecting the environment of the work place is.

**4.**

Pokoik also seeks the exclusion of evidence on a miscellany of topics.  Briefly: (i) if plaintiff wishes to put in evidence about Mr. Pokoik's disputes with the practices of delivering Chinese restaurants as relating to her claim under the Employee and Retirement Income Security Act ("ERISA"), the Court

---

[4] The Scott testimony may be within the category of those issues which plaintiff does not discuss in her opposing memorandum, stating that her "position is that a ruling at this time is premature." (Pl. Mem. in Opp. at 1.)

will schedule a time for it, but not as a part of the scheduled trial, her ERISA claim not being triable to the jury; (ii) Mr. Pokoik's comment in his letter of January 1991 to Judge Ramos precedes plaintiff's employment by more than three years, and is excluded on the same grounds on which Ms. Peiffer's testimony has been excluded; and (iii) plaintiff is essentially correct in suggesting that Pokoik's objection to evidence of Lee Pokoik's "harsh" management style is too general. Since environment is at issue there could well be testimony about management style that is intertwined with testimony as to events of specifically sexual harassment that will have to be allowed. The Court will discuss the matter with counsel prior to openings.[5]

**5.**

Steinberg's motion for bifurcation, to the extent that no evidence of his net worth or wealth is to be admitted until after the jury has determined that an award of punitive damages is warranted, is granted. See Smith v. Lightning Bolt Prods., Inc., 861 F.2d 363, 373-72 (2d Cir. 1988).

---

[5] Pokoik seeks exclusion of evidence several other miscellaneous matters which plaintiff seeks to defer for later discussion. There is nothing in the record so far that suggests the relevance of the matters described under the headings "Marital Counseling," "Medical Records," "Fire Island Trustee," or "Housing Discrimination Lawsuit" in Pokoik's moving memorandum. (Pokoik Mem. at 15-16, 18-19.)

**6.**

Steinberg seeks to bifurcate the issues whether the defendants "are sufficiently related as to render them either a single employer or an integrated enterprise." (Steinberg Mem. at 3.)  In the present case, while such bifurcation might result in considerable convenience for Steinberg, it would not do so for the other parties or for the Court, since the case would, even without Steinberg, no doubt continue; indeed, in the Court's estimation, the price of the bifurcation sought would very probably be a longer trial in its totality.  The motion is denied.

**7.**

Steinberg seeks to exclude certain testimony of Gary S. Rappaport, Sally Kitchen and Michael Steinberg.  The Court assumes those witnesses will testify as described in Plaintiff's Memorandum of Law in Opposition to Defendant SPMC's Motions to Bifurcate Trial and for Rulings in Limine.

Plaintiff may not question Gary S. Rappaport as to whether he had a consensual sexual relationship.

It is not at all clear that plaintiff intends to call Sally Kitchen. (See Pl. Mem. in Opp. at 7.)  Testimony that Ms. Kitchen heard a joke about Michael Steinberg having had a consensual sexual relationship would not be admissible.  Testimony that Mr. Pokoik told jokes of a sexual nature, or included sexually

related jokes in e-mail sent on Steinberg's computer system, would be admissible.

It is also not fully clear that plaintiff will call Michael Steinberg. The Court cannot perceive any relevance to Victoria Kerns' e-mail threats, nor would a consensual sexual relationship between Mr. Steinberg and another person appear to be at all relevant. Any testimony on the part of Mr. Steinberg on Mr. Pokoik's credibility is subject, in the first place, to Fed. R. Evid. 608.

SO ORDERED.

Dated:  September *13*, 2005

Lawrence M. McKenna
U.S.D.J.

10